

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

State Board of Education of Texas
Austin, Texas

Gentlemen:

Opinion Number C-5477
Re: Renewal of textbook
contracts

We have received letters from two different members
of your board requesting the opinion of this department on
several questions relating to the above captioned subject.
The letter dated July 20, 1943, reads in part as follows:

"At the next meeting of the State Board of
Education to be held in Austin on August 2, the
matter of issuing formal proclamation for the
purchase of text books under Article 2846 is to
be considered.

"There seems to be a divided opinion among
some of the members of the Board (practically all
of them are new members) as to whether or not at
this next meeting the Board can proceed to enter
into agreements if it so desires with some of the
publishing companies holding contracts upon which
books are expiring this year, to renew such con-
tracts for the statutory periods under Article
2842 Revised Civil Statutes.

"Therefore, I should like for you to advise,
on or before August 2, 1943, whether or not the
Board can enter into such agreements, without
first issuing the proclamation for such books

State Board of Education of Texas, page #2

under said Article 2846, and whether such re-
newal or extended contracts can be made prior
to the second Monday in October.

"Your attention is directed to the last
clause of the second 'proviso' of Article 2842,
which reads as follows: 'And it shall always be
lawful for them (the board) to renew a contract
on such terms as in their judgment may be for
the best interests of the state.'

"It is contended by some that due to high
costs of material, labor, etc., that the books
under a contract made now will naturally be bid
at a higher price than those books now in adop-
tion, and which may be bought under an extended
or renewed contract. While, on the other hand,
it is likewise contended that a contract should
not be renewed or extended without first examin-
ing all of the books that competition may offer
and the prices asked for such books, otherwise
how can one say that the book in adoption is
best or that the economics involve more thrift,
and selecting the best books at the best prices
necessarily includes knowledge of all the books
which may be offered in each category and the
respective price at which each may be purchased.

"Again, we are confronted with this situation:
The Board has recently been advised by a publisher
holding a contract on certain books going out of
adoption this year, that it will gladly renew its
present contract at the same prices, but if it
should have to submit bids under a new proclama-
tion, it will not do so. This may be the same
situation with other publishers.

"Therefore, can the Board, through the exercise
of its judgment, consideration and discretion, as
given it under Article 2842, enter into such re-
newals or extensions (without issuing the proclama-
tion) and prior to the second Monday in October?"

State Board of Education of Texas, page #3

The letter dated July 26, 1943, is quoted in part as follows:

"To guide and assist us in our deliberations on August 2nd, 1943, I respectfully urge your written answers to the inquiries hereinafter made.

"Article 2846, as amended by the Acts of 1927, 40th Legislature, Page 308, Chapter 213, Section 4, specifically requires the Chairman of the State Board of Education to give public notice two months in advance of the meeting, as required therein, when texts are to be selected and adopted, or where a contract for a text then in use is about to expire.

"Article 2847, Acts of 1927, 40th Legislature, Page 308, Chapter 213, Section 5, relates to all bids submitted for furnishing of textbooks and fixes the eligibility of each bidder.

"Article 2842, Acts of 1927, 40th Legislature, Page 308, Chapter 213, Section 3, relates to continuing or discontinuing textbooks.

"Article 2851, Revised Civil Statutes of Texas, relates to contractors' bonds.

"The renewal of an existing contract with a publisher, or the continuance of the contract, whether at the same or a different price, constitutes, per se, a new agreement, if not as to

State Board of Education of Texas, page #4

terms, at least to the extent that the parties' minds must meet in accord to allow the old agreement to remain in effect for a given time.

"1. Does the State Board of Education, in your opinion, have the legal authority to make a renewal or extension agreement with a text in use that is about to expire at any meeting where notice has not been given as required by the terms of Article 2846 above referred to?

"2. Does the State Board of Education, in your opinion, have the legal authority to renew or extend a contract with a publisher for a text in use that is about to expire when such publisher has failed to file a bid or has failed to comply with the provisions showing eligibility as set forth in Article 2847 above mentioned?

"3. When a contract for a text in use and about to expire has been legally renewed or extended, does the State Board of Education, in your opinion, have the legal authority to dispense, for the extended or renewed term of the agreement, with the contractor's bond prescribed by the terms of said Article 2851?

"Since the purchasing of textbooks under the free textbooks laws of this State is no less a purchase under an extension or continuance of a preexisting contract than under a new adoption, it would seem consistent with the spirit of our laws and the legislative intent to require the same openness, eligibilities and securities with reference to one as to the other."

State Board of Education of Texas, page #5

The questions asked involve an instance of original statutory construction, for as far as we can determine, there have been no cases or opinions which in anyway directly answer such questions.

Article 2842 reads in part as follows:

"It shall be the duty of the Commission to meet annually on the second Monday in October, and at such other times as it may be called together by the Chairman, for the purpose of considering the advisability of continuing or discontinuing, at the expiration of each current contract, any or all of the State adopted textbooks in use in the public schools of Texas, and of making such adoptions as are provided for in Section 6 of this Act. Before making any change in the adopted series, however, the Commission shall, upon thorough investigation, satisfy itself that a change is necessary for the best interests of the school children and that such change is consistent with financial economy. Provided that unless new texts better suited to the Commission are offered to supplant existing texts, then the Commission shall renew the existing contracts for such a period as may be deemed advisable not to exceed a period of six years. Provided, that wherever the contractor supplying any book agrees to renew the contract on the same terms for a period of not less than two years or more than six, the members of the Commission shall give preference to the offer of the Company holding the contract if they shall thereby secure as good or better books at a lower price than by making a different contract; and it shall always be lawful for them to renew a contract on such terms as in their judgment may be for the best interests of the State. Provided further that before the Commission shall determine to displace any book upon which the contract

State Board of Education of Texas, page 56

is expiring, it shall, before making a new
contract for a new text, ascertain through
the office of the State Superintendent of
Public Instruction, the number of usuable
books of the kind on which the contract has,
or is about to expire, there are on hand, and
also the estimated number of such books that
would be required to supply the needs of the
schools of the State using said books for the
first, second and third years immediately suc-
ceeding the expiration of the contract on such
books.  The Commission shall then secure from
the publisher of such book a bid or offer for
the furnishing of such textbooks to meet the
actual necessities of the schools of the State
during the said first, second, and or third
year period, allowing the State, however, a
margin of twenty-five per cent over, or twenty-
five per cent under, the estimated number to
be required.  If, upon consideration of the
cost of the books required to supply such needs
for such a period, it appears to the Commission
that it will be economical to do so, it may make
a contract with such publisher to furnish such
books during said first, second and, or third
year period with a view to using up the entire
supply of such books on hand instead of wasting
the same at the expiration of the original con-
tract.  At the expiration of said period, the
commission shall then make a contract for a
textbook on the subject.  No contract shall
ever be made, binding the State to buy a speci-
fic number or a specific quantity of textbooks,
but all contracts shall be for such books as
the State may need and the purpose of furnish-
ing an estimated number of the books needed, as
above provided, shall have as its purpose to
give the textbook publishers only an approxi-
mation as to the possible quantity of books
which the State may need. * * * At the time the
Superintendent of Public Instruction undertakes
to secure a statement of the number of usable

State Board of Education, page #7

books on hand, as provided above, he shall also
secure from the superintendents of independent
school districts and county superintendents an
expression as to whether or not they believe the
existing text should be re-adopted or a new text
adopted, and such information shall be for the
use of the Textbook Commission, but the Textbook
Commission shall not be bound to re-adopt the old
text or to adopt a new text by reason of such ex-
pression of preference by such superintendents.
Acts 1927, 40th Leg., p. 308, ch. 213, sec. 3."

Article 2846 reads in part as follows:

"When texts are to be selected and adopted
under the provisions of this law, or where a
contract for a text then in use is about to ex-
pire, the Chairman of the Commission shall, two
months in advance of the meeting of the Commission,
at which time, the adoption may be made, give pub-
lic notice by having printed in the public press a
notice to the effect that such meeting will be held
and that adoptions will be made, and by sending
written notices to all persons, firms or corpora-
tions in whose behalf such notices shall have been
requested. Such notices shall state the time and
place of the meeting of the Commission, the sub-
jects on which textbooks may be adopted, and the
last date on which sample copies of books offered,
prepared as provided in the succeeding paragraph
of this Article shall be deposited, the amount of
the cash deposit required, the time allowed for
signing contract and filing bond after award is
made; and that formal proposals will be received
on the date of the meeting." (Emphasis supplied)

Provision is also made for the deposit of sample copies of
books, the filing of bids, and the making of cash deposits.

State Board of Education of Texas, page #8

In Opinion No. O-3939 we said the following about Articles 2847, 2852, and 2853;

"Article 2847 provides for the filing of bids and also for the filing of an affidavit to be executed by the individual bidder or a member of the firm or the president and secretary of the corporation bidding. The affidavit shall contain various statements, among which are that no member of the Commission is in any way interested in such individual, firm or corporation bidding; the names of any and all persons who may have at any time during the preceding year received, either directly or indirectly, any money or other thing of value from said company for services rendered the State; the names of all the people employed to act for such bidder, directly or indirectly, in any way whatsoever in securing the contract or in the preparation of its bids, etc. The statements made in the affidavit are declared to be warranties, and 'if found to be untrue, shall subject the contract to forfeiture and authorize a recovery on the bond to the full amount thereof, as liquidated damages, unless it be shown that such mis-statement or non-disclosure of fact was unintentional or an oversight on the part of said publisher.'

"Provision is made that the maximum price for the books under the contract shall not exceed the minimum price at which the publisher sells the books in wholesale quantities, and that a contract providing for a higher price shall be void. (Article 2852) Provision is made that no books shall be purchased from anyone connected with a trust and that the bidder shall file an affidavit stating that he is not connected directly or indirectly with a trust. (Article 2853)."

Article 2851 provides that the "bidder to whom any contract may have been awarded shall execute a good and sufficient bond" in the amount and under the conditions specified therein.

State Board of Education of Texas, page #9

We now have before us various statutory provisions directly bearing upon the questions asked, and we think that the proper construction of such provisions impels the conclusion that a renewal of a contract must be made in the same manner as the making of an original contract, and notice must be given in accordance with Article 2846.

Referring back to Article 2842, you will note that it is the duty of the Board of Education (Article 2675b-6) to meet annually on the second Monday in October " * * * for the purpose of considering the advisability of continuing or discontinuing, at the expiration of each current contract, any or all of the State adopted textbooks in use in the public schools of Texas, and of making such adoptions as are provided for in Section 5 of this Act."   Thus, it is seen that it is the express duty of the Board of Education to meet in October to determine whether any textbook, at the expiration of the contract covering the book, should be continued in use.  The following clause appears:

> "Provided, that wherever the contractor supplying any book agrees to renew the contract on the same terms for a period of not less than two years or more than six, the members of the Commission shall give preference to the offer of the Company holding the contract if they shall thereby secure as good or better books at a lower price than by making a different contract; and it shall always be lawful for them to renew a contract on such terms as in their judgment may be for the best interests of the State."  (Emphasis supplied)

The first clause manifestly contemplates that more than one bid or offer may be made, and it provides that preference shall be given the company holding the contract under the conditions outlined therein.  It has been urged that the second clause affords the legal basis for renewing a contract without going through the steps required by Article 2746, but we do not think that this was the intent of the Legislature in enacting said second clause.

State Board of Education of Texas, page #10

The first clause provides that preference shall be given the holder of a contract if as good or better books at a lower price under a renewed contract may be obtained. However, suppose the books are as good but the unit price is higher than that bid of another publisher. The State may have on hand many books, covered by the expiring contract, in usable condition; therefore, the Board may decide that it would be more economical to supplement these books than to make a change. Under the second clause above quoted, we think that the Board may accept the bid of the contractor and renew the contract.

This conclusion is consistent with the general purpose of the textbook law. Provision is made for competitive bidding, the deposit of sample books, and an examination of the books by the Board of Education. The Legislature provided certain safeguards and restrictions in the adoption of books and letting of contracts. As we said in Opinion No. O-3939, "These safeguards were put in the statutes for the benefit of the State of Texas and its citizens, to secure for school children the best books at a fair price, to assure the people that they would get full value for their tax money, and to eliminate the possibility of fraud and deception."

By simply renewing a contract without following the statutory steps, the purposes of the law, with respect to bidding and a study of the books offered so that the best would be selected, could be entirely averted. How can the Board know without an examination of books that better texts offering more effective means of instruction are not offered, or that other books will not be more economical to adopt? It was not the intent of the Legislature to allow a circumvention of the purposes of the Act and an aversion of the statutory safeguards, for conditions both as to bidders and books could have entirely changed since the original contract was made.

Moreover, you will note that Article 2846 provides that the notice shall be given when texts are to be selected or adopted, "or where a contract for a text then in use is about to expire." This is a further indication that renewals are to be made like any other adoption.

State Board of Education of Texas, page #11

     In the July 23rd letter it is asked whether the Board may enter into extensions or renewals without issuing notice and prior to the second Monday in October. It is our opinion that the notice is required. The Board must meet on the second Monday in October, but it may also meet at other times. We assume that the question asked has reference to the current year. Therefore, a notice of two months from August 2nd would continue into October. Hence, we answer this question in the negative. We also answer the three questions asked in the July 26th letter in the negative.

                                     Very truly yours

APPROVED JUL 31, 1943        ATTORNEY GENERAL OF TEXAS

FIRST ASSISTANT           By George W. Sparks
ATTORNEY GENERAL              George W. Sparks
                                 Assistant

OWS-s



APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN